IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| JANE R. LITTMANN, PH.D., | ) | |
| | ) | C/A 3:03-762-CMC-BM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -versus- | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| SOUTH CAROLINA DEPARTMENT OF | ) | |
| MENTAL HEALTH, | ) | |
| | ) | |
| Defendant. | ) | |
| ——————————————————— | ) | |

This action has been filed by the Plaintiff against her employer, the Defendant South Carolina Department of Mental Health, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et. seq., and the Equal Pay Act, 29 U.S.C. § 206(b).

The Defendant filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on January 14, 2005. Plaintiff filed a memorandum in opposition on February 15, 2005, and the Defendant filed a reply memorandum on February 24, 2005. Following a ruling on a subsequently filed motion to strike, the motion for summary judgment was removed from the docket pending an appeal.

This Court's order relating to the motion to strike was affirmed on August 3, 2005, and the motion for summary judgment was restored to the docket on August 23, 2005. A supplemental response was then filed on September 12, 2005, following which a supplemental reply



1

was filed by the Defendant on September 22, 2005. A hearing was held before the undersigned on December 8, 2005, at which both parties were represented by able counsel. Further discussion among counsel followed, during which the case was again held in abeyance. Those discussions having failed to resolve this matter, the Defendant's motion for summary judgment is back before the Court for disposition.[1]

### Background and Evidence[2]

Plaintiff is a female psychologist who has worked for the Defendant since 1980, when she was hired as an unclassified Teaching Psychologist I at the William S. Hall Psychiatric Institute ("Institute"), with the academic rank of Assistant Professor. Plaintiff's Deposition, pp. 26-27.[3] In 1982, Plaintiff was promoted to an unclassified Teaching Psychologist II. Plaintiff obtained the academic rank of Associate Professor in 1985, and Full Professor in 2004, although she remained an unclassified Teaching Psychologist II for purposes of her job with the Defendant. Plaintiff's Deposition, p. 64; see also Plaintiff's Attachment G.

After the University of South Carolina School of Medicine was established in the mid 1970s, the Defendant and the Medical School (both state agencies) entered into written

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C. The Defendant has filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[2]The facts and evidence are considered and discussed in this Report and Recommendation in the light most favorable to the party opposing summary judgment. Pittman v. Nelms, 87 F.3d 116, 118 (4th Cir. 1996).

[3]Unclassified teaching psychologists at the Institute were required to maintain an academic appointment with the USC Medical School, and were assigned a rank ranging from Assistant Professor, to Associate Professor, to Full Professor. Donald Affidavit, ¶¶ 9-10.



agreements by which the Department of Neuropsychiatry and Behavioral Science of the Medical School was based at the Institute. In addition to all of the Institute's unclassified faculty being required to maintain appointments with the Medical School, the Institute's director also held the position of Chair of the Medical School's Department of Neuropsychology and Behavioral Science. Donald Affidavit, ¶¶ 1-4, 9. In 1986, the Child and Adolescent Unit and the Forensic Unit of the South Carolina State Hospital were also transferred to the Institute, along with the classified psychologists who worked at the State Hospital. Donald Affidavit, ¶ 12; Noyes Affidavit, ¶ 2; Plaintiff's Deposition, pp. 31-32 and Exhibit 3. As a result of this transfer, these classified psychologists were also required to maintain appointments with the Medical School. Donald Affidavit, ¶ 12; see also Barber Deposition, p. 21.

Under the State employment system, "classified" positions are subject to the classification policies and regulations created by the South Carolina Budget and Control Board, while "unclassified" positions are not subject to these classification policies and regulations. See S.C.Code Ann. §§ 8-11, 220, 230. Dr. Alexander Donald, who served as the Institute's first Director and held the position for twenty-four (24) years, attests that the amount the unclassified teaching psychologists were paid was based upon their academic rank, years of post-Ph.D. experience, annual performance reviews, and seniority with the Department of Mental Health. While the Defendant denies that academic rank played any role in setting salaries for unclassified workers, Donald attests that academic rank was of key importance in setting salaries, as it reflected the reasons the Institute and the "teaching" psychologist positions were created. Donald also attests that the "unclassified" designation was designed to permit more flexibility than was allowed for setting the salaries for "classified" positions, and therefore a certain amount of subjectivity and

3



discretion entered into the decisionmaking for determining the salaries of these unclassified personnel. <u>Donald Affidavit</u>, ¶¶ 9-10.

Plaintiff asserts in this lawsuit that she has been discriminated against in her pay on the basis of her sex. Plaintiff identifies three (3) unclassified male psychologists, Dr. George Rekers, Dr. George Holmes, and Dr. William Gore, as comparators for purposes of this lawsuit. <u>See</u> <u>Plaintiff's Memorandum in Opposition to Summary Judgment</u>, p. 10. Dr. Rekers was hired as an unclassified Teaching Psychologist II at the Institute in 1985. <u>Donald Affidavit</u>, ¶ 7; <u>Rekers Deposition</u>, p. 9. Dr. Holmes was hired as a classified Psychologist III at the South Carolina State Hospital in 1969, and later became an unclassified Teaching Psychologist I in 1971 at the Institute. Dr. Gore was hired in 1975 as an unclassified Teaching Psychologist I at the Institute. <u>See</u> <u>30(b)(6) Deposition</u>, at pp. 23-26. Plaintiff asserts that until Dr. Gore's retirement in December 2004, she, Dr. Gore, Dr. Holmes, and Dr. Rekers were the only unclassified teaching psychologists who worked at the Institute continuously since 1985. In addition to these three unclassified employees, Plaintiff also argues that male psychologists in classified positions were paid more than or nearly as much as she was paid, even though they had lower academic rank, less post-Ph.D. experience, or less seniority, and that these classified psychologists are also "comparators" for purposes of this lawsuit. <u>See</u> <u>Plaintiff's Memorandum in Opposition to Summary Judgment</u>, p. 10.

Plaintiff complained to the Defendant about these alleged pay disparities, and when she did not receive what she considered to be adequate responses to her complaints, she filed an administrative charge of discrimination with the South Carolina Human Affairs Commission



(SCHAC)[4] on July 16, 1996. <u>Plaintiff's Deposition, Exhibit 48</u>. SCHAC made a finding that Plaintiff had been the victim of discrimination, and after issuance of a right to sue letter on December 17, 2002, Plaintiff filed this action in United States District Court.  See <u>Noyes Deposition, Exhibit 21</u>.

### Discussion

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P.  The moving party has the burden of proving that judgment on the pleadings is appropriate.  Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P.

### Scope of Claim

In her first cause of action, Plaintiff alleges that she was treated disparately in terms of her pay in violation of both the Equal Pay Act and Title VII.[5]  With respect to her Title VII

---

[4]As South Carolina is a deferral state, Plaintiff could file her administrative claim with SCHAC, instead of with the Equal Employment Opportunity Commission (EEOC).  <u>Nelson v. Lockheed Missiles and Space Co.</u>, No. 97-1430, 1997 WL 727609 at **1 n. 1 (4th Cir. November 24, 1997); <u>E.E.O.C. v. Hansa Products, Inc.</u>, 844 F.2d 191, 192 n. 1 (4th Cir. 1988) (quoting 42 U.S.C. § 2000e-5(e)) ["A deferral state is one 'which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice.'"]; <u>see</u> S.C.Code Ann. § 1-13-90, <u>et. seq.</u>, as amended.

[5]This is now the only claim being asserted in this lawsuit.  Plaintiff's complaint contains a second cause of action for retaliation, but Plaintiff has withdrawn that claim, both in her brief and orally through counsel at the hearing.



claim, Plaintiff filed her charge of discrimination on July 16, 1996. <u>Plaintiff's Deposition, Exhibit 48</u>. Defendant contends, and Plaintiff does not dispute, that any right of recovery under Title VII is limited to alleged discriminatory acts that occurred within three hundred (300) days of the filing of her administrative charge. <u>See</u> 42 U.S.C. § 2000e-5(e); <u>White v. BFI Waste Services, LLC</u>, 375 F.3d 288, 292 (4th Cir. 2004) [only acts of discrimination which occurred within three hundred day period immediately proceeding the filing of an administrative charge of discrimination may be considered]. Therefore, any right of recovery under Plaintiff's Title VII claim is limited to alleged acts of discrimination occurring after September 21, 1995. Consideration of any *evidence* relating to a purported discriminatory pay scale, however, is not limited to this 300 day period. <u>See</u> <u>Brinkley-Obu v. Hughes Training, Inc.</u>, 36 F.3d 336, 346-347 (4th Cir. 1994) ["Statutes of limitations do not operate as an evidentiary bar controlling the evidence admissible at the trial of a timely-filed cause of action"]; <u>Cf</u> <u>Forsyth v. Federation Employment and Guidance Serv.</u>, 409 F.3d 565, 573 (2d Cir. 2005).[6]

With respect to Plaintiff's Equal Pay Act claim, the applicable statute of limitations for an Equal Pay Act claim is two (2) years. 29 U.S.C. § 255(a). Plaintiff filed this lawsuit on March 11, 2003. Therefore, Plaintiff can only recover under the Equal Pay Act for any violations that occurred on or after March 11, 2001.

### Title VII Claim

With respect to Plaintiff's Title VII claim, disparate treatment cases require proof of intentional discrimination, either by direct evidence or by the structured procedures set forth

---

[6]This same rule with regard to evaluation of the evidence applies to Plaintiff's Equal Pay Act claim as well. <u>Brinkley-Obu</u>, 36 F.3d at 346-347.



in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973); <u>see also</u> <u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248 (1981).  Plaintiff does not contend that she has any direct evidence of pay discrimination, but instead argues her claim under the <u>McDonnell Douglas</u> indirect evidence proof scheme.[7]

      The United States Supreme Court articulated a three-part analysis for reviewing discrimination cases in <u>McDonnell Douglas</u>.  <u>First</u>, Plaintiff must establish a prima facie case of discrimination.  Once a prima facie case has been established, a rebuttable presumption is created that the employer unlawfully discriminated against the Plaintiff.  <u>Second</u>, once this presumption has been established, the burden of production shifts to the employer to show a legitimate, non-discriminatory reason for its actions.  <u>Third</u>, if the employer shows a legitimate, non-discriminatory reason for its actions, the burden is then on the Plaintiff to come forward with evidence that the employer's asserted reasons for its actions are a mere pretext for its true discriminatory motives, and that the actions of the employer were really based on Plaintiff's gender.  <u>McDonnell Douglas Corp.</u>, 411 U.S. at 802-805; <u>Texas Dep't of Community Affairs</u>, 450 U.S. at 252-256; <u>Conkwright v. Westinghouse Elec. Corp.</u>, 933 F.2d 231, 234-235 (4th Cir. 1991). Despite these shifting burdens of production, however, Plaintiff retains the ultimate burden of persuasion on the issue of discrimination throughout.  <u>Texas Dep't of Community Affairs</u>, 450 U.S. at 252-253; <u>see also</u> St.

---

[7]Pursuant to recent court rulings, consideration of Plaintiff's claim under the so-called "mixed-motive" analysis is also now allowed, even though Plaintiff has presented only circumstantial, or in-direct, evidence of discrimination.  Previously, consideration of a claim under the mixed-motive analysis was only proper in direct evidence cases. <u>See</u> <u>Hill v. Lockheed Martin</u>, 354 F.3d 277, 284-285 (4th Cir. 2004); <u>Mereish v. Walker</u>, 359 F.3d 330, 339-340 (4th Cir. 2004); <i>cf</i>. <u>Taylor v. Virginia Union Univ.</u>, 193 F.3d 219, 232 (4th Cir. 1999) [en banc]. However, since Plaintiff is only pursuing her claim under the traditional <u>McDonnell Douglas</u> proof scheme, the undersigned has only evaluated Plaintiff's claim using a <u>McDonnell Douglas</u> analysis.



Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993).

**1) Prima facie case**. In order to establish a prima facie case for sex discrimination in compensation under Title VII, a Plaintiff must show that (1) she is a member of a protected class; (2) she was paid less than an employee outside the class; and (3) the higher paid employee was performing a substantially similar job. Brinkley-Obu v. Hughes Training, Inc., 36 F.3d at 343; Kess v. Municipal Employees Credit Union of Baltimore, Inc., 319 F.Supp.2d 637, 644 (D.Md. 2004); Gbenoba v. Montgomery County Dep't of Health & Human Servs., 209 F.Supp.2d 572, 579 (D.Md. 2002).

It is undisputed that Plaintiff is a member of the protected class and that she was paid less than some males employees. With respect to the third prong of Plaintiff's prima facie case, however, the salient issue that must be addressed by the Court is exactly who constitutes a "male co-employee" of the Plaintiff for purposes of comparison. Some of the males identified by the Plaintiff received their paychecks from the Defendant (as does the Plaintiff), while others received their paycheck from USC. There is also the question of whether or not classified employees can be comparators with the Plaintiff, who is an unclassified employee. In deciding this issue, it is the Plaintiff who has the burden of showing which, if any, of these employees qualify as comparators for purposes of her Title VII claim. Mandell v. County of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003); Holbrook v. Reno, 196 F.3d 255, 261 (D.C.Cir. 1999). An examination of the evidence reveals as follows:

**Unclassified Employees**. With respect to the unclassified employees, Plaintiff does not dispute that both Dr. Rekers and Dr. Holmes are paid by USC, not by the Institute. However, it is also undisputed that both Dr. Rekers and Dr. Holmes have their offices at the Institute, and



defense counsel conceded at the hearing that Plaintiff, Dr. Rekers, Dr. Holmes, and Dr. Gore all performed substantially the same duties at the Institute, with some variations. Dr. Donald also attests that "[t]o my knowledge, all the Unclassified Teaching Psychologists II's had substantially the same skills, exerted substantially the same effort, and had substantially the same amount of responsibility." Donald Affidavit, ¶9. See Brinkley-Obu, 36 F.3d at 346-347 [evidence not limited to 300 day period prior to administrative filing period]. Therefore, at least with respect to their work, these male co-workers could historically qualify as "comparators" for purposes of Plaintiff's claim. See Soble v. University of Maryland, 778 F.2d 164, 167 (4th Cir. 1985) [For work to be equal it is not necessary that the positions or work at issue be identical in every respect]; Hodgson v. Fairmont Supply Co., 454 F.2d 490, 493 (4th Cir. 1972) [Plaintiff must show that she and her male counterpart perform substantially equal work in terms of "skill, effort, and responsibility."]; Brennan v. Prince William Hosp. Corp., 503 F.2d 282, 285 (4th Cir. 1974) [Actual work performed rather than titles controls determination of whether employees performed substantially equal work].

Defendant argues, however, that since Dr. Rekers and Dr. Holmes were employed by USC, they cannot be comparators to the Plaintiff even though they all worked at the Institute, citing to Glunt v. GES Exposition Services, Inc., 123 F.Supp.2d 847 (D.Md. 2000). Glunt states that to establish a claim under the EPA[8], a plaintiff employee must show that members of the opposite sex "employed in the same establishment" received different wages for equal work

---

[8]Although Glunt involves an EPA claim, the analysis it provides is applicable to Plaintiff's Title VII claim with regard to who can be a comparator. Tomka v. Seiler Corp., 66 F.3d 1295, 1312 (2d Cir. 1995) ["A claim of unequal pay for equal work under Title VII…is generally analyzed under some standards used in an EPA claim."].

9



on the basis of sex. <u>Glunt</u>, 123 F.Supp.2d at 855.  Defendant argues that since Dr. Holmes and

Dr. Rekers are employees of USC, they did not work in the same "establishment" as the Plaintiff.

However, the undersigned does not find that this term as used in <u>Glunt</u> is dispositive in the case

at bar. <u>See</u> 29 C.F.R. § 1620.9 ["[E]stablishment…refers to a distinct physical place of business

rather than to an entire business or 'enterprise' which may include several separate places of

business."]. The Institute was obviously a distinct place of business at which all of these

individuals worked, regardless of the source of their salaries.    Nevertheless, Defendant is

correct that employment by different entities or organizations will normally bar any claims of

comparator status between workers. *Cf*. <u>Sandoval v. City of Bolder Colorado</u>, 388 F.3d 1312,

1328 (10th Cir. 2004).

   Plaintiff argues that, under the facts of this case, even though Dr. Holmes and Dr.

Rekers receive their paychecks from USC, they are proper comparators under the common law

agency test set forth in <u>Farlow v. Wachovia Bank of North Carolina</u>, 259 F.3d 309 (4th Cir.

2001). Defendant correctly notes, however, that the issue presented in <u>Farlow</u> was whether the

claimant and the purported comparators were employees of a single employer, or whether the

alleged comparators were instead actually independent contractors. <u>See</u> <u>Farlow</u>, 259 F.3d at 313.

That is not the question presented in the case at bar.  Plaintiff does, however, also argue that the

evidence is sufficient to create a genuine issue of fact as to whether Dr. Rekers and Dr. Holmes

were employees of both the Defendant *and* USC (i.e., "joint-employers"), or whether both entities

were the single employer of Dr. Rekers and Dr. Holmes (arguably a "single-employer"



contention).[9] The "single employer" test under Title VII looks at the overall relationship of the two entities, while "joint employer" status is determined by focusing on the entities' relationships to given employees or a class of employees. <u>Sandoval</u>, 388 F.3d at 1324.

       The undersigned does not find that Plaintiff has presented evidence to establish a material issue of fact as to whether the Institute and USC were a "single employer" for purposes of her claim. The single employer analysis weighs four factors in considering whether two nominally separate entities constitute an "integrated enterprise" or a single employer: (1) interrelations of operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership and financial control. <u>Sandoval</u>, 388 F.3d at 1322-1323. The evidence presented does not show sufficiencies of common management, operations, or financial dealings between the Defendant and USC to meet these criteria. <u>Id</u>., at n. 3 ["We note that other courts have been particularly cautious in finding that two nominally separate state or municipal governmental entities are in fact a single employer, since such a conclusion effectively negates what we assume was a state's conscious choice to create distinct organizations."].

       With regard to whether the Defendant and USC could be considered "joint employers", the evidence presents a much closer case. "[The] joint-employer test acknowledges that the two entities are separate, but looks to whether they co-determine the essential terms and conditions of employment." <u>Bristol v. Bd. of Com'rs of Clear Creek</u>, 312 F.3d 1213, 1218 (10th Cir. 2002). "Courts applying the joint-employer test treat independent entities as joint employers

---

       [9]Defendant argues that Plaintiff has not argued the applicability of the "single employer" concept. However, Plaintiff's arguments as set forth in her brief and as presented orally at the hearing are sufficient to encompass this concept for purposes of summary judgment review.



if the entities 'share or co-determine those matters governing the essential terms and conditions

of employment.'  In other words, courts look to whether both entities 'exercise significant control

over the same employees.'"  <u>Bristol</u>, 312 F.3d at 1218, citing <u>Virgo v. Riviera Beach Assocs.,

Ltd.</u>, 30 F.3d 1350, 1360 (11th Cir. 1994), and <u>Graves v. Lowery</u>, 117 F.3d 723, 727 (3d Cir.

1997). "Essential" terms and conditions of an employment relationship have been described as

follows:

> A defendant may be held liable under Title VII if it (1) fits within the "employer"
> definition of Title VII and (2) "exercises substantial control over significant aspects
> of the compensation, terms, conditions, or privileges of plaintiff's employment."
> <u>Magnuson [v. Peak Tech. Servs.,Inc.]</u>, 808 F.Supp. [500,] 507 [(E.D.Va. 1992)(citing
> <u>Amarnare [v. Merrill Lynch</u>, 770 F.2d 157 (2d Cir. 1985)], In determining
> "employer" status, the court is guided by the "broad, remedial purpose of Title VII
> which militates against the adoption of a rigid rule strictly limiting 'employer' status
> . . . to an individual's direct or single employer."  <u>Id</u>. at 508 (footnote omitted). . . .
> The United States Court of Appeals for the Fourth Circuit follows the hybrid, or
> Spirides, test for Title VII cases.  <u>See</u> <u>Garrett v. Phillips Mills, Inc.</u>, 721 F.2d 979,
> 981-982 (4th Cir. 1983).  The <u>Spirides</u> test, while emphasizing the control exhibited
> by the putative employer, considers eleven additional factors to determine if an
> individual is an employee: (1) the type of occupation; (2) the skill required for the
> occupation; (3) who furnished the equipment used at the place of work; (4) the length
> of time worked; (5) the method of payment; (6) how the relationship is terminated;
> (7) whether annual leave is available; (8) whether work is integral part of employer's
> business; (9) whether the employer provides retirement benefits; (10) whether the
> employer pays social security taxes; and (11) the intention of the parties.  <u>Id</u>. at 982.
> . . . In <u>Amarmare</u>, . . . the court focused in on the employer's right to control the
> plaintiff.  The <u>Amarmare</u> court held that "[w]hen an employer has the right to control
> the means and manner of an individual's performance . . . an employer-employee
> relationship is likely to exist."  <u>Id</u> at 348 (citing <u>Spirides</u>, 613 F.2d at 831-832).  As
> evidence of this control, the court noted that the defendant "exercised complete
> control over [the plaintiff's] work assignments, the means and manner of her
> performance, and the hours of her employment," and retained a right to discharge the
> plaintiff.  <u>Id</u>.  In light of this degree of control, "[f]actors other than control are then
> of marginal importance."  <u>Id</u>.  Thus, the determination that an individual is an
> employee under Title VII hinges on control.

<u>Williams v. Grimes Aerospace Co.</u>, 988 F.Supp. 925, 934-935 (D.S.C. 1997); <u>see</u> <u>also</u> <u>Riddle v.

Greenville Transit Authority</u>, No. 05-2617, 2006 WL 1328234 (D.S.C. May 12, 2006); <u>see</u> <u>also</u>



<u>Simpson v. Greenville Transit Authority</u>, No. 05-1087, 2006 WL 1148167 (D.S.C. April 27, 2006).

Here, the Defendant concedes that it provides general oversight of Dr. Rekers' and Dr. Holmes' work and has the ability to determine the duties of those two professors. <u>Cuffe February 2005 Affidavit</u>, ¶¶ 2-4. Portions of their salaries are also paid by the Defendant through reimbursement to USC. <u>Barker Affidavit</u>, ¶ 7. Dr. Donald attests that when he was director of the Institute, he also concurrently held the position of Chair of the Department of Neuropsychology and Behavioral Science at the Medical School, and that his position was funded in part by the Department of Mental Health and in part by USC. Donald further attests that Dr. Holmes provided part-time services to the Medical School while also continuing to perform his duties as an unclassified teaching psychologist at the Institute, and that Dr. Holmes' work was supervised by Dr. Bill Rothstein, the Institute's Chief of Psychology Services and Director of the Clinical Psychology Internship Program. Donald also attests that when Dr. Rekers was hired to fill a vacant unclassified teaching psychologist position in 1985, he was one of the persons who interviewed Dr. Rekers, and that after Dr. Rekers was hired he was also supervised by Dr. Rothstein. See <u>Plaintiff's Exhibit C [Donald Affidavit]</u>.

However, as indicated by the Court in <u>Williams</u> and other cases, the most essential control over the terms and conditions of employment is the right to hire, fire, and determine compensation and benefits. <u>Bristol</u>, 312 F.3d at 1219; <u>Sandoval</u>, 388 F.3d at 1324 ["Most important to control over the terms and conditions of an employment relationship is the right to terminate it under certain circumstances."]. It is undisputed in the evidence that only USC has the right to fire Dr. Rekers or Dr. Holmes. <u>Barker Affidavit</u>, ¶ 8; <u>Rekers Deposition</u>, p. 112. The Defendant has also submitted evidence to show that USC sets and pays Dr. Rekers' and Dr.



Holmes' salaries and benefits, while Plaintiff's salary is set by the Defendant.  <u>Barker Affidavit</u>,

¶¶ 7, 11, 13; <u>Noyes February 2005 Affidavit</u>, ¶¶ 4 and 5; <u>Cuffe February 2005 Affidavit</u>, ¶ 5.

The right to hire and fire, and to set and pay salaries, is the most fundamental aspect of

employment and the most important factor to consider when evaluating employment.  <u>Williams</u>,

988 F.Supp. at 934-935. Therefore, even though the evidence shows that both Rekers and Holmes

had their offices at the Institute and were generally supervised there by Dr. Rothstein, since the

evidence does not show that the Defendant set the salaries for Rekers and Holmes or that the

Defendant could terminate their employment, Plaintiff has not shown the necessary criteria of

"control" by the Defendant to allow Rekers and Holmes to be her comparators.[10] Therefore, only

Dr. Gore is a comparator of the Plaintiff among the unclassified employees for purposes of this

lawsuit.

       **Classified Positions.**  With regard to the classified positions, Defendant concedes

that the classified and unclassified psychologists have basically the same duties.  <u>See</u> <u>Memorandum

in Support of Summary Judgment</u>, p. 2.  However, the Defendant argues that the compensation

procedures for classified and unclassified positions are very different; <u>Id.</u>; <u>Plaintiff's Deposition</u>,

pp. 168-169; with the main discernable difference appearing to be that salary increases for

classified positions are subject to more rigid standards.  <u>See</u> <u>Defendant's 30(b)(6) Deposition</u>, p.

26; <u>Barber Deposition</u>, p. 51.  However, this difference does not in and of itself prevent the

classified employees from being Plaintiff's comparators, as the evidence shows that the  Defendant

--------------------------------------------------

[10]Notwithstanding this finding, even if the Court were to find at this stage of the
consideration of Plaintiff's claim that Rekers and Holmes are proper comparators under the joint
employer analysis, her claim fails with regard to these two individuals at the pretext stage.  <u>See</u>
discussion, <u>infra</u>.



itself compares the classified and unclassified positions to make sure there are no salary discrepancies, and has also used these comparisons to justify salaries for individual psychologists.

Leroy M. Barber was the Associate Director for Administration for the Defendant from October 1, 1984 to 1998, when his title was changed to Director of Corporate Compliance. Barber, who retired on June 1, 2000, testified that when determining whether or not a salary recommendation was appropriate, the following factors were considered: experience, education and the salaries of other individuals within the facility and state guidelines. Barber Deposition, pp. 12, 18. Barber testified that experience could include experience inside and outside of the Department. Barber Deposition, p. 18. Significantly, Barber also testified that, in a salary study done by the Defendant, Plaintiff's comparators included both classified and unclassified psychologists. Barber Deposition, pp. 27-28. Indeed, the evidence shows that Plaintiff received an increase in her salary to correct for some inequities found as a result of comparing her salary to other Institute employees, including classified employees Stephen Shea and Jeffrey Vidic. Barber Deposition, pp. 43, 46. Hence, as the Defendant has itself used classified psychologists as comparators of the Plaintiff for salary purposes, there is at least a question of fact as to whether these individuals are proper comparators for the Plaintiff. Beck-Wilson v. Principi, 441 F.3d 353, 363 (6th Cir. 2006)[Whether two positions are substantially equal for purposes of a discrimination claim is a question of fact for the jury]; Soble, 778 F.2d at 167 [For work to be equal it is not necessary that the positions or work at issue be identical in every respect]; Hodgson, 454 F.2d at 493 [Plaintiff must show that she and her male counterpart perform substantially equal work in terms of "skill, effort, and responsibility."]; Brennan, 503 F.2d at 285 [Actual work performed rather than titles controls determination of whether employees performed substantially equal work].

15



Defendant also argues that psychologists in the forensic psychology area are in a more specialized field and are not proper comparators for the Plaintiff, who is in child psychology. It is true that to be substantially equal, two jobs must require the same skill, which includes experience, training, education, and ability; see Cherrey, 805 F.Supp. at 1262; and jobs that are more specialized and require distinct skills are not normally found to be substantially equal to jobs that are not so specialized. See Soble, 778 F.2d at 167 [plaintiff's position as assistant professor at dental school was not substantially equal to that of male assistant professors in other departments because those departments required distinctive skills]; accord Strag v. Bd. of Trustees, 55 F.3d 943, 950 (4th Cir. 1995)[math teacher and biology teacher at same school were not performing substantially equal jobs]. However, the Defendant's own treatment and evaluation of the employees at issue here undermines this argument. Mary Osborne, Compensation and Classification Manager, attests that "to maintain internal equity among psychologists, the [Defendant] compares an applicant's qualifications to the qualifications of its current psychologists in the same pay band who work in the facility where the applicant will be working." Osborne Affidavit, ¶ 7. Further, the Defendant itself admits that, in setting the salary of Dr. Michael Reid, it compared Reid (child psychology) to Drs. Vidic and Geoffrey McKee (forensic psychology). See Defendant's Brief, pp. 32-33; see also Noyes Deposition, Exhibit 4. Dr. Donald also attests that, with respect to pay, "[t]he amount to be paid to the Unclassified Teaching Psychologists was determined based upon years of post-Ph.D. experience (which also related to whether they were a Teaching Psychologist I or II), academic rank, annual performance evaluations and seniority at the Department of Mental Health. . . ."; Donald Affidavit dated February 14, 2005, ¶ 10; while in Defendant's 30(b)(6) responses, Defendant states with regard to hiring salaries, "[t]he Department

16



does not . . . place more value on a degree in a particular type of psychology.  Rather, the Department looks at whether the psychologist has a Ph.D." See Defendant's 30(b)(6) Deposition, Exhibit 10, p. 37.

This evidence does not support Defendant's argument that forensic psychologists are not proper comparators of the Plaintiff for purposes of this motion.  Indeed, it is clear in this evidence that the Defendant itself used classified and unclassified psychologists as comparators for each other in evaluating salaries.  Therefore, the classified psychologists working for the Defendant are proper comparators for the Plaintiff for purposes of her discrimination claim. Beck-Wilson, 441 F.3d at 363[Whether two positions are substantially equal for purposes of a discrimination claim is a question of fact for the jury]; Soble, 778 F.2d at 167 [For work to be equal it is not necessary that the positions or work at issue be identical in every respect]. *Cf.* Ercegovich v. Goodyear Tire & Robber Co., 154 F.3d 344, 352 (6th Cir. 1998) [Plaintiff must only prove that all "relevant" aspects of her employment situation matches that of a comparator]; Jones v. Southcorr, L.L.C., 324 F.Supp.2d 765, 778 (M.D.N.C. 2004), aff'd, 117 Fed.Appx. (4th Cir. 2004).

**Salary Comparisons of Applicable Employees.**  The following salary comparisons are from 1995 forward.  However, although Plaintiff can only recover under her Title VII claim from September 2, 1995 forward and under her EPA claim from March 11, 2001, she can use evidence of salary discrimination prior to these dates to support her claim.  See Brinkley-Obu, 36 F.3d at 345-347.  The figures shown in the chart were compiled from the information contained in Defendant's 30(b)(6) Deposition, Exhibit 2; see also Defendant's 30(b)(6) Deposition, pp. 16, 24.  Multiple salary increases in one year are reflected by showing multiple salaries under the



respective year.

## Salary Comparison Chart for Plaintiff's Comparators[11]

Teaching Psychologist II ("TP-II")
Psychologist IV ("IV")
Licensed Psychologist ("LP")
Chief Psychologist ("Chief")
Assistant Director ("ADir")
Program Manager I ("PM-I")
Program Manager II ("PM-II")

| Year | 1995 | 1996 | 1997 | 1998 | 1999 | 2000 | 2001 | 2002 | 2003 | 2004 |
|---|---|---|---|---|---|---|---|---|---|---|
| **Caesar** | 49,599 | 61,115 | 62,642 | 64,208 | 70,628 | 75,309 | 77,202 | 77,974 | 77,974 | 80,313 |
| (Position) | IV | PM-I | PM-I | PM-I | PM-II | PM-II | PM-II | PM-II | PM-II | PM-II |
|  | 51,419 |  |  |  | 72,746 | 76,062 | 77,974 |  |  |  |
| (Position) | IV |  |  |  | PM-II | PM-II | PM-II |  |  |  |
|  | 59,106 |  |  |  | 73,473 |  |  |  |  |  |
| (Position) | ADir |  |  |  | PM-II |  |  |  |  |  |
| **Cuccaro** | 46,347 | 47,922 | 49,120 | 50,348 | 55,382 | 57,613 | 59,643 | (Left in 2001) |  |  |
| (Position) | IV | LP | Chief | Chief | Chief | Chief | Chief |  |  |  |
|  |  |  |  |  | 57,043 | 59,053 | 60,537 |  |  |  |
| (Position) |  |  |  |  | Chief | Chief | Chief |  |  |  |
| **Gore** | 56,736 | 58,665 | 60,131 | 61,634 | 64,715 | 69,322 | 70,708 | 70,708 | 70,708 | 72,829 |
| (Position) | TP-II | TP-II | TP-II | TP-II | TP-II | TP-II | TP-II | TP-II | TP-II | TP-II |
|  |  |  |  |  | 67,303 |  |  |  |  |  |
| (Position) |  |  |  |  | TP-II |  |  |  |  |  |
| **Littman** | **49,278** | **50,953** | **57,449** | **58,885** | **64,773** | **69,383** | **70,770** | **70,770** | **70,770** | **72,893** |
| **(Position)** | **TP-II** | **TP-II** | **TP-II** | **TP-II** | **TP-II** | **TP-II** | **TP-II** | **TP-II** | **TP-II** | **TP-II** |
|  |  | **56,048** |  |  | **67,363** |  |  |  |  |  |
| **(Position)** |  | **TP-II** |  |  | **TP-II** |  |  |  |  |  |
| **McKee** | 52,617 | 54,405 | 55,765 | 57,159 | 61,816 | 62,434 | 63,994 | 66,258 | 66,258 | 68,245 |
| (Position) | IV | LP | Chief | Chief | Chief | Chief | Chief | Chief | Chief | Chief |
|  |  |  |  | 60,016 |  |  | 66,258 |  |  |  |
| (Position) |  |  |  | Chief |  |  | Chief |  |  |  |
| **Musick** | - | - | - | - | - | 55,400 | 57,352 | 60,557 | 60,557 | 62,171 |
| (Position) |  |  |  |  |  | Chief | Chief | Chief | Chief | Chief |
|  |  |  |  |  |  | 56,785 | 58,212 |  |  |  |
| (Position) |  |  |  |  |  | Chief | Chief |  |  |  |
|  |  |  |  |  |  |  | 59,958 |  |  |  |
| (Position) |  |  |  |  |  |  | Chief |  |  |  |

---

[11]All of the shown comparators are classified and unclassified psychologists employed by the Defendant.



| Year | 1995 | 1996 | 1997 | 1998 | 1999 | 2000 | 2001 | 2002 | 2003 | 2004 |
|---|---|---|---|---|---|---|---|---|---|---|
| **Myers** | 47,455 | 49,068 | 50,294 | 51,551 | 64,778 | 65,425 | 67,730 | 69,432 | 69,432 | 71,514 |
| (Position) | IV | LP | Chief | Chief | PM-I | PM-I | PM-I | PM-I | PM-I | PM-I |
| | | | | 62,892 | | 67,060 | 68,745 | | | |
| (Position) | | | | PM-I | | PM-I | PM-I | | | |
| **Reid** | 48,000 (employed for only one year, hired in 1994-check his leave date) | | | | | | | | | |
| (Position) | IV | | | | | | | | | |
| **Shea** | 47,183 | 48,787 | 50,006 | 51,256 | 58,072 | 71,187 | 76,881 | (left in 2001) | | |
| (Position) | IV | LP | Chief | Chief | Chief | Pr.MgrI | UNCL Pr.Mgr. | | | |
| | | | | 56,381 | 69,396 | 76,881 | | | | |
| (Position) | | | | Chief | PM-I | UNCL.Pr.Mgr. | | | | |
| **Vidic** | 49,659 | 51,347 | 52,630 | 53,945 | 53,945 | | | | | |
| (Position) | IV | LP | Chief | Chief | Chief | | | | | |

As can be seen from this chart, as of 1995 Plaintiff's fellow unclassified psychologist, Dr. Gore, was paid over $7,000.00 more than the Plaintiff, a situation which continued through 1999. Donald attested that Plaintiff's position was virtually identical to the position held by Gore. With regard to other factors, Plaintiff had a higher academic rank while Gore had more post PhD experience. Donald Affidavit, ¶ 7; see also Rekers Deposition, pp. 139-140, 155; 30(b)(6) Deposition, pp. 23-24, 26, 36. Plaintiff also points out that, since she filed her charge of discrimination, her salary vis a vis Dr. Gore has been increased such that, as of 2004, they make almost the exact same salary.

Plaintiff and Dr. Caesar made almost the same salary in 1995, but Caesar has received substantially greater increases over the years and, as of 2004, made over $7,000.00 more than the Plaintiff, even though Plaintiff has a higher academic rank[12] than Caesar, six more years of post-doctoral experience, and more seniority. See Defendant's 30(b)(6) Deposition, pp. 22-24, Exhibit

---

[12]Although the Defendant has not contested the academic ranks for the classified psychiatrists, Plaintiff has not provided specific cites to the record for the academic rank of her classified comparators. If the Defendant does dispute these academic ranks, it should notify the Court within five (5) days and Plaintiff will then be responsible for providing record citations to the Court within three (3) days.



2. Dr. Reid, although being shown on the chart as having made less than Plaintiff in 1995, was only employed by the Defendant for one year. The evidence reflects that Reid was hired in 1994 at a salary of $48,000.00. Plaintiff's salary at the time was only $46,055.00, even though she had a higher academic rank and more post PhD experience. <u>See</u> <u>Defendant's 30(b)(6) Deposition</u>, pp. 9-11.

Dr. Shea's salary was lower than Plaintiff's until he was made a Program Manager I effective October 17, 1999. <u>See</u> <u>30(b)(6) Deposition</u>, pp 20-21& <u>Exhibit 2</u>. At that time, Plaintiff was directing the CDT Program, and she continued to do so throughout the remainder of Shea's employment, which ended on April 2, 2001. <u>See</u>  <u>30(b)(6) Deposition</u>, p. 21 <u>Exhibit 2</u>; <u>Cuffe Deposition</u>, pp. 10-11, 41, and <u>Exhibit 1</u>. Shea was paid approximately $2,000 more than Plaintiff in 1999, $7,500 more in 2000, and $7,000 more in 2001, even though Plaintiff had 10 years more post-doctoral experience and more seniority than Shea. <u>See</u> <u>30(b)(6) Deposition</u>, pp. 20-21 & <u>Exhibit 2</u>. Plaintiff also points out that Shea was hired for almost $10,000 more than Dr. Donna Culley, a female forensic psychologist with almost identical training and experience. <u>See</u> <u>30(b)(6) Deposition, Exhibit 2</u>.

As for Dr. Vidic, Plaintiff had earned a higher academic rank, had 9 years more post-doctoral experience, and had more seniority than Vidic. <u>See</u> <u>30(b)(6) Deposition</u>, pp. 20-21 & <u>Exhibit 2</u>. Plaintiff also trained Vidic and was his supervisor when he interned at the Institute. <u>See</u> <u>30(b)(6) Deposition</u>, p. 15. However, in 1994 Defendant paid Vidic $47,969 per year and Plaintiff $46,055 per year. <u>See</u> <u>30(b)(6) Deposition, Exhibit 2</u>.

A reasonable fact finder could construe these facts as evidence that employees from outside Plaintiff's protected class who performed substantially the same job as the Plaintiff received



more favorable pay.  Therefore, the undersigned finds that Plaintiff has established all of the necessary elements for her prima facie case, and the Court must therefore turn to consideration of the next prong of the <u>McDonnell Douglas</u> analysis. <u>See</u> <u>Texas Dep't of Community Affairs</u>, 450 U.S. at 253 [The burden of establishing a prima facie case is not onerous].

        **2) <u>Legitimate, non-discriminatory reason</u>.**  To meet its burden of establishing a legitimate, non-discriminatory reason for its salary decisions,[13] the Defendant has presented evidence on each comparator in an attempt show that Plaintiff was paid less due to differences in her responsibilities, training, or a particular hiring situation. <u>See</u> <u>Memorandum in Support of Summary Judgment</u>, pp. 29-42. This evidence is sufficient for the Defendant to meet its burden of production, and the Court must therefore turn to consideration of the final prong of the <u>McDonnell Douglas</u> analysis. <u>EEOC v. Clay Printing Co.</u>, 955 F.2d 936, 941 (4th Cir. 1991) [ADEA case] [The defendant's burden is only one of production, not of persuasion].

        **3) <u>Pretext</u>.** Where a Defendant rebuts the employee's inference of discrimination by demonstrating a legitimate, non-discriminatory reason for the employment decision, in order to prevail the Plaintiff/employee must demonstrate by a preponderance of the evidence that the employer's proffered reason is a mere pretext for discriminatory conduct. To make this demonstration, Plaintiff must show that "but for" her employer's intent to discriminate against her because of her sex, she would not have been paid less than her male comparators. <u>EEOC</u>, 955 F.2d at 941; <u>Conkwright v. Westinghouse</u>, 933 F.2d 231, 234 (4th Cir. 1991).  "Direct or indirect evidence of discriminatory motive may do, but 'the evidence as a whole . . . must be sufficient

---

[13]The establishment of a prima facie case shifts to the Defendant the burden of producing evidence on this issue.  <u>Lovelace v. Sherwin Williams Co.</u>, 681 F.2d 230, 239 (4th Cir. 1982).



for a reasonable fact-finder to infer that the employer's decision was motivated by [gender animus].'" LeBlanc v. Great American Insurance Co., 6 F.3d 836, 843 (1st Cir. 1993)(citing Goldman v. First Nat'l Bank, 985 F.2d 1113, 1117 (1st Cir. 1993)(quoting Connell v. Bank of Boston, 924 F.2d 1169, 1172, n. 3 (1st Cir. 1991), cert. denied, 111 S.Ct. 2828 (1991)); see Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 141-143 (2000).

          After careful review of the evidence and arguments submitted to the Court, the undersigned finds that Plaintiff has raised a sufficient issue of material fact as to whether she was the victim of sex discrimination to avoid summary judgment.  The evidence, considered in the light most favorable to the Plaintiff, shows that she received less pay than male comparators.  See discussion, supra.  Although the Defendant attempts to distinguish each of these comparators based on varied specific job requirements, the evidence shows that the Defendant itself did not distinguish between these alleged different areas of expertise or responsibilities in making salary decisions, that the Defendant itself used classified employees' salaries as comparators for the Plaintiff, and that the Defendant itself used individuals with different specific responsibilities to justify higher salaries for other male comparators who did not have those same responsibilities.

          Barber testified that Plaintiff's comparators included both classified and unclassified psychologists.  Barber Deposition, pp. 27-28.  Barber also testified that Plaintiff's salary was compared to Shea and Vidic;  Barber Deposition, p. 46; while the Defendant also used the salaries of Drs. Vidic and McKee in setting Dr. Reid's salary.  See Defendant's Brief, pp. 32-33; see also Noyes Deposition, Exhibit 4.  Each of these positions had different specific assignment and responsibilities. Likewise, Dr. Myers was compared to Dr. Caesar and Dr. Forand even though their positions had varying degrees of responsibilities.  See 30(b)(6) Deposition, at p. 30.  Defendant also



compared Dr. Musick to Drs. Tezza and Dr. Brawley. See 30(b)(6) Deposition, at p. 29. Although there is not a full discussion of Drs. Tezza and Brawley's responsibilities in the record, they also appear to have differing responsibilities. When Rothstein attempted to have Plaintiff's salary discrepancy addressed, he compared her salary to Reid even though Reid's job had differing responsibilities. Plaintiff's Deposition Exhibit 49; see also discussion, supra.

Defendant also asserts that academic rank has no bearing on the Defendant's determination of salaries; 30(b)(6) Deposition, p. 46; however, Dr. Donald attests that academic rank did matter for the unclassified teaching positions. Donald Affidavit, ¶¶ 9-10. Defendant also makes an argument that seniority is not considered in pay increases. However, the evidence shows that on June 14, 1995, the Defendant's own Compensation Manager outlined pay guidelines for fiscal year 1995-1996 which specifically included the number of years of service as a factor to be considered. See Defendant's 30(b)(6) Deposition, Exhibit 4. Donald also attests that seniority was a factor. Donald Affidavit, ¶ 10. Therefore, for at least a portion of the time covered by Plaintiff's Title VII claim there is a question of fact as to whether seniority was considered in pay increases, and the evidence shows that despite her seniority and additional years of post PhD experience, Plaintiff made less than male comparators over the time period considered. The following chart sets forth Plaintiff's experience compared to her comparator's experience.



Comparators

|          | Received PhD[14] | Date of Hire[15] |
|----------|------------------|------------------|
| Caesar   | 1985             | 1987             |
| Cuccaro  | 1988             | 1987             |
| Gore     | 1974             | 1975             |
| **Littman** | **1979**      | **1980**         |
| McKee    | 1969             | 1985             |
| Musick   | 1994             | 1994             |
| Myers    | 1987             | 1982             |
| Reid     | 1988[16]         | 1994             |
| Shea     | 1989             | 1990             |
| Vidic    | 1988             | 1993             |

This chart reflects that Plaintiff had both more post PhD experience and more seniority than Caesar, Cuccaro, Musick, Myers, Reid and Shea. Plaintiff also notes that, while she has at all times made more than Cuccaro, in 1994 Cuccaro's salary was only $1,062 less than Plaintiff's salary. 30(b)(6) Deposition, Exhibit 2. Plaintiff had been an Associate Professor for more than 15 years before Cuccaro attained that rank in 2000, she had nine more years of post-doctoral experience, and 7 years of seniority. Plaintiff also argues that, while she has always been paid more than Dr. Myers, Myers has been treated more favorably. Plaintiff has a higher rank, eight more years of post-doctoral experience, and more seniority, but in 2004 Myers was paid $71,514, as compared to Plaintiff's salary of $72,893, a mere difference of $1,379. Plaintiff argues that her performance was rated as "Substantially Exceeds", the highest rating available, while Myers was

---

[14]See Defendant's 30(b)(6) Deposition, pp. 9-14, 18, 20, 22-23, 28-29, 31, 33.

[15]See Defendant's 30(b)(6) Deposition, pp. 12-13, 18, 21, 22-23, 28-29, 31

[16]At the time that Reid was hired in 1994, Reid had five to six years post PhD experience. See Defendant's 30(b)(6) Deposition, pp. 9-10. However, at the time Reid was hired, the Defendant miscalculated Reid's post PhD experience and believed that he had between twenty-four and twenty-five years experience. Id.



awarded a 22% pay raise after he received two (2) years of only "Exceeds" ratings. <u>See</u> <u>30(b)(6)</u> <u>Deposition</u>, pp. 29-30. Plaintiff argues her superior performance has never been similarly acknowledged. <u>See</u> <u>30(b)(6) Deposition</u>, pp. 18-19, 29-31 & <u>Exhibit 2</u>. While these two psychologists cannot be used as comparators for purposes of Plaintiff's prima facie case, this evidence is appropriate for consideration as evidence of a discriminatory animus under the pretext prong of the <u>McDonald Douglas</u> analysis.

Defendant has presented no argument to show that any salary discrepancy resulted from Plaintiff's performance. To the contrary, Plaintiff's performance based upon her performance reviews and the record appears to have always been of a high quality. <u>See</u> <u>30(b)(6) Deposition</u>, pp. 53-54; <u>Cuffe Deposition</u>, pp. 8-9; <u>Cuffe Deposition Exhibits 1 and 2</u>. While the evidence presented is obviously not conclusive on the issue of whether Plaintiff was discriminated against because of her sex, the undersigned does not find that "[n]o reasonable trier of fact could conclude" that Plaintiff's gender was the reason she was not paid less than male employees who performed substantially similar jobs for the Defendant.[17] <u>Spratley v. Hampton City Fire Dept.</u>, 933 F.Supp. 535, 542 (E.D.Va. 1996), <u>aff'd</u>, 125 F.3d 848 (4th Cir. 1997); <u>see Conkwright</u>, 933 F.2d at 234 ["[I]ndirect evidence of discriminatory motive may do [as long as it is] sufficient for a reasonable

---

[17]With regard to the USC employees Rekers and Holmes, assuming the Court were to find that these two employees are proper comparators; <u>see</u> discussion, <u>supra</u>; the undersigned does not find the Defendant's reasons for their salary discrepancies to be pretextual. Barber testified that Rekers and Holmes were employees of the University of South Carolina and that their salaries were paid by the University. <u>Barber Deposition</u>, pp. 51, 54. Barber further testified that the Defendant did not have any input into the amount of salaries paid to the University's employees. <u>Barber Deposition</u>, p. 56. Plaintiff has not presented any evidence to show otherwise. Therefore, even assuming arguendo that Plaintiff could use Rekers and Holmes to establish her prima facie case, she has not shown that the Defendant's arguments as to the higher salaries of these two comparators to be pretextual.



factfinder to infer that the employer's decision...was motivated by [gender]"]; <u>Muhammad v. Klotz</u>, 36 F.Supp.2d 240, 243 (E.D.Pa. 1999) ["Thus, at the summary judgment stage the only inquiry is the threshold one of determining whether there is a need for a trial, that is, 'whether the evidence presents a sufficient disagreement to require submission to [the jury] or whether it is so one-sided that one party must prevail as a matter of law'"], citing <u>Anderson</u>, 477 U.S. at 250-252; <u>Reeves</u>, 120 S.Ct. at 2105-2109 [setting forth the general proposition that where a plaintiff presents a prima facie case together with sufficient evidence to conclude that the employer's asserted justification for the employment decision is false, a trier of fact can conclude that the employer unlawfully discriminated]. Therefore, Defendant's motion for summary judgment with regard to Plaintiffs sex discrimination claim under Title VII.

### Equal Pay Act Claim

The Equal Pay Act provides that,

> (1) No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (I) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex....

29 U.S.C.§ 206(d)(1).

In order to establish a prima facie case under the Equal Pay Act, Plaintiff must show that she received less pay than a male co-employee performing work substantially equal in skill, effort, and responsibility under similar working conditions. <u>Houck v. Virginia Polytechnic Inst. & State Univ.</u>, 10 F.3d 204, 206 (4th Cir. 1993).   If Plaintiff establishes a prima facie case, the burden



shifts to the Defendant to prove that the difference in salary is justified by one or more of the four statutory exceptions.  29 U.S.C. § 206(d)(1) (2002); Equal Employment Opportunity Comm'n v. Aetna Co., 616 F.2d 719, 724 (4th Cir. 1980)(quoting § 206(d)(1)).  If the Defendant successfully meets this burden, then Plaintiff's claim fails "unless the plaintiff can satisfactorily rebut the defendant's evidence."  Strag v. Board of Trustees, 55 F.3d 943, 948 (4th Cir. 1995).

For the same reasons discussed in the analysis of Plaintiff's Title VII claim, the undersigned finds that Plaintiff has shown that she received less pay than a male co-employee performing work substantially equal in skill, effort, and responsibility under similar working conditions. See discussion, supra.  Therefore, Plaintiff has established her Equal Pay Act prima facie case.

Plaintiff having established a prima facie case, the burden shifts to the Defendant to prove by a preponderance of the evidence that any salary disparities are based on one of the four enumerated statutory factors.  For purposes of summary judgment, the Defendant argues only the second and fourth statutory factors, ie., that salary disparities are based on merit or a factor other than sex.  See Memorandum in Support of Motion for Summary Judgment, pp. 21-22.  The undersigned has already examined the Defendant's reasons for the salary disparities under Plaintiff's Title VII claim (including merit and the factors other than sex presented by the Defendant), and has found that Plaintiff's claim should go forward.  The evidence also clearly shows that Plaintiff was paid less than male comparators during the relevant time period, and, given the subjective nature of many of the employment decisions made, the undersigned cannot find that the Defendant has produced facts to show that these salary discrepancies were based on facts other than sex sufficient to meet the high standard for granting summary judgment.  Strag, 55 F.3d at 949-951 [Defendant



has burden of producing facts to show pay differentials are based on factors other than sex]; <u>Keziah & W.M. Brown & Son, Inc.</u>, 888 F.2d 322, 326 (4th Cir. 1989)[Subjectivity in salary setting process undermines efforts to show pay differentials are based on factors other than sex]; <u>Brewster v. Barnes</u>, 788 F.2d 985, 992 (4th Cir. 1986)["The Defendant's burden of proving that wage differential is due to a factor other than sex is a heavy one."][18] Therefore, the Defendant is not entitled to summary judgment on Plaintiff's EPA claim.

<u>Conclusion</u>

Plaintiff agrees to dismiss her retaliation claim (second cause of action). Based on the foregoing, it is recommended that the Defendant's motion for summary judgment with respect to Plaintiff's claims for sex discrimination under Title VII and the EPA be **denied**.

_____
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

June 30, 2006

---

[18]Even though Defendant has the burden of proof under Plaintiff's EPA claim at this stage, the undersigned finds that Defendant meets its burden with the reasons for the salary discrepancies of Rekers and Holmes. <u>See</u> discussion, <u>supra</u>.

